IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JHEN SCUTELLA, | ) | |
|     Petitioner, | ) | Civil Action No. 09-82 Erie |
| | ) | |
| v. | ) | Senior District Judge Maurice B. Cohill |
| | ) | Magistrate Judge Susan Paradise Baxter |
| D.M. CHAMPERLAIN, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

### II.    REPORT[1]

Petitioner Jhen Scutella has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he claims that his trial counsel was ineffective for failing to properly argue his suppression motion, and then, upon the trial court's denial of that motion, advising him that he should accept the Commonwealth's plea offer. He also claims that as a result of counsel's ineffectiveness, his guilty plea was unlawfully induced. (See *Petition*, ECF No. 9 at 6-9; *Brief*, ECF No. 9-2). As set forth below, the state court rejected Scutella's post-conviction challenge to his judgment of sentence. There is no basis for this Court to disturb the state court's decision under the applicable standard of review. 28 U.S.C. § 2254(d).

---

[1]    Respondents have submitted the relevant state transcripts and the Common Pleas Court's file, which will be cited to as "CP Dkt. No. __."

1

## A. Relevant Background

The Honorable Fred P. Anthony, who presided over Scutella's pre-trial hearing on the motion to suppress, provided the following summary:

> On March 31, 2004, at approximately one fifteen in the afternoon, Detective Donald Dacus of the Erie Police Department, Vice Unit, was assisting in an investigation of Scutella. Det. Dacus was present when Scutella was arrested in the parking lot of a Burger King one quarter of a mile away from the Bel-Aire Clairon hotel (hereinafter "Bel-Aire"), and within sight of the hotel. Defendant was placed under arrest by Sergeant Nolan of the Erie Police Department. Sgt. Nolan obtained a hotel room key for room 346 from Defendant and provided Det. Dacus with the room number. Sgt. Nolan relayed to Det. Dacus that Defendant was staying at the Bel-Aire with a black female. It was Det. Dacus' understanding that the female was in the room at the time of Defendant's arrest. Det. Dacus was told that other officers were in the process of obtaining a search warrant for the hotel room.
>
> Det. Dacus went to the Bel-Aire and contacted the desk clerk, the manager, and the manager of housekeeping. The hotel staff informed him that a Kathy Tweed had rented the room in question. The clerks explained that a person matching the description of Defendant had been paying cash for the room, and they had not seen anyone other than that person come and go from the room.
>
> At approximately one forty-five in the afternoon, Det. Dacus accompanied housekeeping to room 346 so that he could make sure no one was in the room. Housekeeping knocked on the door and announced their presence. There was no response from the room. Det. Dacus then knocked and announced "police." Again, there was no response, and Det. Dacus did not hear anyone moving inside the room, nor did he inquire of housekeeping whether the windows in the room were operational.
>
> Housekeeping opened the door for Det. Dacus who entered the room for approximately thirty seconds to one minute to look for any persons who might be in the room. He did not search for anything other than a person, and he did not search in any place other than where a person might be hidden. Det. Dacus did not find anyone inside the room. He left, and housekeeping locked the room. Det. Dacus requested that the electronic keys for the room be disengaged and left in the hotel.
>
> At approximately seven forty-five in the evening, Det. Dacus and other officers returned with a warrant to search room 346. Police seized evidence found in a black bag on a table in the room [including approximately 9 ½ ounces of cocaine, a handgun, and a scale].

(CP Dkt. No. 16, Commonwealth v. Scutella, No. 1324 of 2004, slip op. at 1-3 (C.P. Erie Apr. 22, 2005). See also Commonwealth v. Scutella, No. 1324 of 2004, slip op. 4-7 (C.P. Erie May 9, 2008)).

Scutella was arrested that day. By Information he was charged with: Counts 1 and 2, Possession With Intent to Deliver a Controlled Substance; Counts 3 and 4, Possession of a Controlled Substance; Count 5, Unlawful Delivery of a Controlled Substance; and Count 6, Possession of Drug Paraphernalia. (CP Dkt. No. 3).

Scutella's attorney, David G. Ridge, Esquire, filed a motion to suppress, in which it was contended that the evidence seized from the hotel room should be suppressed because the following statement in the affidavit of probable cause was a material misstatement of facts:

> Upon arriving at E.P.D. Scutella did tell Lt. Fetterman that he was staying in room #346 of the Bel-Aire Clarion Hotel with a female he did not wish to name and didn't want us to tell his girlfriend Megan Hopkins about this room.
>
> - - -
>
> Due to the information received from Scutella regarding *his rental of room # 346* of the Bel-Aire Clarion Hotel, …

(CP Dkt. No. 1 (emphasis added)). At the suppression hearing, the Commonwealth acknowledged that Scutella had not told the officers that he "rented" the hotel room in question, and that the statement to that effect contained in the affidavit of probable cause was inaccurate. (CP Dkt. No. 16, Scutella, No. 1324 of 2004, slip op. at 4).

In denying this argument, Judge Anthony noted that "misstatements of fact will invalidate a search warrant and require suppression of the fruits of the search only if the misstatements of fact are *deliberate* and *material*." (Id., quoting Commonwealth v. Yerger, 482 A.2d 984 (Pa.Super. 1984) (emphasis in Yerger, citation omitted)). A material fact is defined as "one without which probable cause to search would not exist." (Id., quoting Commonwealth v. Mickell, 598 A.2d 1003 (Pa.Super. 1991)).

3

When determining whether the misstatement is material, "the test is not whether the statement *strengthens* the application, but rather is *essential* to it. This is determined by deleting the misstatement from the application, and then seeing whether the application still states enough to show probable cause." (Id., quoting Yerger (emphasis in Yerger, citations omitted)).

Judge Anthony then restated the entire affidavit of probable cause, minus the misstatement indicating that Scutella was the registered renter of the hotel room. (Id. at 4-6). He concluded:

> The Court finds that there was an ample basis upon which to find probable cause even in the absence of the misstatements. Defendant was observed leaving the hotel and driving to a Burger King parking lot just a few blocks away where he was caught selling cocaine to a third person. Defendant had a hotel key on him, and hotel staff placed him as staying in the room for a significant period of time. *The mere fact that Defendant was not the registered guest in the room does not negate probable cause.* When viewed in light of the fact that the hotel staff indicated that he was paying cash daily for a room located just [a] few miles from his residence and that there had been complaints about the odor of marijuana in the room, there was more than a fair probability that contraband or evidence of a crime will be found in Defendant's room.
>
> - - -
>
> … The Supreme Court has remarked that not every inaccuracy will justify an exclusion of evidence obtained as a result of the search. See Commonwealth v. Monte, 329 A.2d 836 (Pa. 1974). In the case at bar, the only statements that were not true related to Defendant's "rental" of the hotel room. While it is true that Defendant was not the registered guest in the room, he did have a key, and he was paying for the room. The Court finds that this is more the case of a poor choice of words on the part of the police officer rather than a deliberate misstatement of the fact. Moreover, the Court notes that the affidavit did identify Kathy Teed as the registered guest in the room.
>
> The Court finds that the misstatements contained in the affidavit of probable cause were not material misstatements of fact.

(Id. at 7-8).

Next, Judge Anthony addressed Scutella's second argument in support of suppression, which was that the police improperly searched his hotel room prior to obtaining the warrant. The Commonwealth contended in response that the police only entered the room to secure the premise and that it did so under exigent circumstances. Judge Anthony agreed and held:

4

> Police may be justified in searching a house for other persons who may be armed or who could destroy or remove evidence in order to secure the house while obtaining a warrant for a further search and possible seizure of evidence. See Commonwealth v. Curry, 494 A.2d 1146 ([Pa.Super] 1985) (noting U.S. v. Allison, 639 F.3d 792 (D.C. Cir. 1980) (upheld warrantless search of hotel room, where agents were informed by arrested defendant that another person was staying with him at the hotel, and that this person had "dope" and a "gun"; this provided the necessary "exigent circumstances" because the contraband was threatened with "imminent removal or destruction").
>
> In this case, Defendant was suspected of delivery of crack cocaine, possessing cocaine with the intent to deliver, possession, and possession of drug paraphernalia. These are all serious offenses. The police had reason to believe that Kathy Tweed might be in a hotel room and that given Defendant's drug dealing activities there might be guns in the hotel room. Moreover, there was a strong likelihood that Ms. Tweed would destroy evidence if she were in the room and had seen the arrest – the Burger King where Defendant was arrested is within sight of the Bel-Aire – or suspected that Defendant had been arrested because he did not return within an appropriate amount of time. Additionally, the room was peaceably entered with the help of housekeeping staff in the middle of the afternoon.
>
> Here, the police merely entered the room to ensure that no one was inside it. Although no one responded when housekeeping knocked and announced or when the police knocked and announced, the police are not required to accept this as proof that no one was in the room. The officer only entered the room to make sure that no one else was in it. Importantly, he only searched in those places where a person could be hidden, then he secured the door and waited for the warrant. He did not look in drawers or in the black bag that was seen on the table. Nothing was seized until officers returned with the warrant.
>
> Under the circumstances, the Court finds that this was a proper warrantless entry.

(Id. at 8-10).

After Judge Anthony issued his decision, the Commonwealth offered Scutella a plea bargain: He would plead guilty to Count 2 and receive a sentence of 4 ½ to 10 years of imprisonment, and the Commonwealth would *nolle prosse* the remaining counts. (See Plea Hr'g Tr. at 8-9). Attorney Ridge sent Scutella a letter dated August 25, 2005 (which was entered as Exhibit 1 at the subsequent post-conviction hearing). In the letter, Ridge "outlined for him two different choices he would have as to how the case should proceed." (PCRA Hr'g Tr. 2/25/08 at 6). Ridge explained:

Ridge: [A]s I outlined [in my letter to Scutella, I] would negotiate a plea bargain… whereby, I would try to get him the best deal possible, for lack of better term, that

5

|  | he would still be facing a mandatory minimum of four years regardless. You folks [the prosecution] had made that abundantly clear, that was not going to go away. Perhaps I could do something about the remaining charge, or reduce time on the remaining charge, or proceed with an appeal. And I outlined for him if he was going to proceed and take an appeal of Judge Anthony's opinion, we have to move to a trial proceeding first. I believe [my August 25, 2005 letter] recommends a non-jury trial as opposed to a jury trial. And I quote him basically what I thought the odds would be of him winning the suppression issue if we did proceed to an appeal. |
|---|---|
| ADA: | Did you make it clear to him though as to it was his choice as to what to do? |
| Ridge: | I believe I did. |

(Id. at 6-8). Ridge also advised Scutella that if he pleaded guilty, he would not be able to appeal Judge Anthony's decision regarding the suppression issues. (Id. at 9). But Ridge cautioned Scutella that if he did not accept the Commonwealth's plea offer, the Information would be amended to add an additional count against him:

|  |  |
|---|---|
| Ridge: | The Information – either you [ADA Sambroak] or [DA] Foulk discovered the Information did not properly reflect the charges as originally filed. And I believe that it may have left out the charge arising out of a delivery at Burger King. So I talked in this letter about [the prosecution]. Again, … the D.A.'s office forewarned if we proceed to trial, you were going to move to amend the Information. I told him I thought the Court would allow that to happen since it was pretrial. But, yes, to answer your question, in consideration of his plea Mr. Foulk agreed that you folks would only seek – he would only have to plead to possession with intent to deliver for the drugs found in the hotel room and all the other charges would either be withdrawn, or not refiled or no amended Information would be filed. |

(Id. at 10).

On cross-examination, when asked what advice he "expressly" gave to Scutella regarding which option to pursue, Ridge explained:

|  |  |
|---|---|
| Ridge: | Well, I don't think I would have told him which option to pursue, but I know part of the conversation was if you go to trial and lose, you're probably looking at more than four, four and a half years. I mean the D.A.'s office again had made that clear to me in conjunction with the plea bargain offer, that if we proceeded |

6

> with trial and proceed with appeals, they weren't going to – they weren't going to settle for just four, four and a half years.
>
> - - -
>
> [In my letter to Scutella] I talk about the fact that the issues [raised in the suppression motion] were legitimate. I, obviously, did not agree with Judge Anthony's opinion…. But I quote in my one letter, I believe that I told him, "Only about an approximate twenty percent of all appeals are successful." So in other words, don't get your hopes up too high if you wanted to go that route.
>
> - - -
>
> I agree[d] with [Scutella's] decision [to accept the plea offer]. Because, again, he was facing the possibility of more time … had he gone to trial, lost and not been successful on appeal.

(Id. at 18, 21-23).

Scutella entered his plea on July 6, 2005. On September 7, 2005, the court sentenced him to the term agreed upon by the parties.

Subsequently, Scutella filed a *pro se* motion for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, in which he argued, as he does here, that Ridge was ineffective for failing to properly argue his suppression motion; for advising him that he should accept the Commonwealth's plea offer; and, that as a result of counsel's ineffectiveness, his guilty plea was unlawfully induced. The PCRA Court (the Honorable Shad Connelly) eventually appointed William J. Hathaway, Esq., to represent him, and counsel filed a supplemental PCRA petition. (CP Dkt. No. 35).

The PCRA Court held a hearing at which both Scutella and Ridge testified. (See PCRA Hr'g Trs. 2/25/08 and 3/27/08). On May 9, 2008, the PCRA Court issued an Opinion in which it denied Scutella's request for relief. (CP Dkt. No. 41, Commonwealth v. Scutella, No. 1323 of 2004, slip op. (CP Erie May 9, 2008)). It explained that under the law, Scutella is permitted to withdraw his guilty

7

plea if ineffective assistance of counsel caused the entry of an involuntary plea of guilty. It then concluded that Scutella had failed to establish that Ridge was ineffective:

> The Court agrees with Judge Anthony's Constitutionally sound and learned Opinion of April 22, 2005, and finds Petitioner's underlying claim [that the evidence should have been suppressed] meritless. Although the Court finds Petitioner's underlying claim to be meritless, a finding of arguable merit as to this issue would not, upon further analysis of Petitioner's claim of ineffective assistance of counsel, entitle Petitioner to relief.
>
> [I]n order for there to be ineffective assistance of counsel, it must also be shown [that] counsel's performance was not reasonably designed to effectuate Petitioner's interests. [Commonwealth v. Lynch, 820 A.2d 728, 733 (Pa.Super. 2003)]. Counsel inherently has broad discretion in determining the arguments and the course of strategy to be employed in order to effectuate their client's interest. See, Commonwealth v. Fowler, 670 A.2d 153, 155 (Pa.Super. 1996). Due to this discretion, Petitioner must show Attorney Ridge's counsel was "so lacking in reason that, in light of all the alternatives available, no competent attorney would have chosen it." Commonwealth v. Howard, 749 A.2d 941, 955 (Pa. Super. 2000). Furthermore, counsel "cannot be held ineffective for selecting a particular reasonable course, even if other reasonable choices were available." Id. Also, the mere fact that counsel's actions lead to an unsuccessful outcome does not render such actions unreasonable to effectuate Petitioner's interests. Commonwealth v. Fisher, 813 A.2d 761, 767 (Pa. 2002).
>
> Petitioner argues Attorney Ridge was ineffective in failing to properly argue the suppression motion, which led to a denial of Petitioner's Motion to Suppress Physical Evidence. See, *Motion for Post Conviction Collateral Relief (Attached Argument)*. Petitioner attempts to bolster his contentions by providing case law he deems more suited to his suppression argument. Id. The Pennsylvania Supreme Court in Fisher held, "speculation by hindsight that a different strategy might possibly have been successful is not the test which establishes ineffectiveness of counsel." Fisher, 813 A.2d at 767. Pursuant to the finding regarding unsuccessful outcomes in Fisher, the mere fact Petitioner did not obtain the desired suppression does not show ineffective assistance of counsel. Id. And, pursuant to the findings regarding alternative arguments in Howard, the Court finds that simply providing case law not cited at the Pre-Trial Suppression Hearing or in its Brief in Support falls far short of showing Attorney Ridge's unsuccessful suppression argument was so lacking in reason that, in light of all the alternatives available, no competent attorney would have chosen it. The Court finds Attorney Ridge's counsel, while perhaps not successful in regards to suppression, was nonetheless reasonable to effectuate Petitioner's interests.

(Id. at 12-13).

On February 11, 2009, the Superior Court of Pennsylvania issued a Memorandum in which it affirmed the PCRA Court's decision. (CP Dkt. No. 44, Commonwealth v. Scutella, No. 969 WDA 2008, slip op. (Pa.Super. Feb. 11, 2009)). On November 24, 2009, the Pennsylvania Supreme Court denied a petition for allowance of appeal.

In this habeas action, Petitioner challenges the outcome of the PCRA proceedings and raises the same issues that he raised in that proceeding. He contends that he is entitled to a new trial. Respondent has filed an Answer (ECF No. 22) and the relevant state court records.

### B.  Discussion

The U.S. Supreme Court has strictly limited the circumstances under which a guilty plea may be attacked on collateral review:

> It is well settled that a voluntary and intelligent plea of guilt made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct appeal. Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal. Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.

Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotations and citations omitted). By knowingly pleading guilty, Scutella waived his right to have a trial by a jury, to be presumed innocent until proven guilty, and to have the prosecutor prove his guilt beyond a reasonable doubt. Since a plea of guilty constitutes an admission of all facts necessary for conviction, he waived his right to contest the sufficiency of the evidence that might have been produced at trial. See, e.g., United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) (a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges). See also 1A Charles Alan Wright et al., FEDERAL

PRACTICE AND PROCEDURE § 172 (4th ed. 2010) (collecting cases for the proposition that a guilty plea waives claims that the government's evidence was insufficient to sustain a conviction).

In an attempt to get around the limitation his guilty plea has on his availability to receive relief on collateral review, Scutella contends that his plea was defective because Attorney Ridge was ineffective. Because the state court rejected this claim on the merits, this Court's analysis of it is governed by the Antiterrorism and Effective Death Penalty Act's ("AEDPA's") standard of review, which modified "a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As codified at 28 U.S.C. § 2254(d), AEDPA restricts a federal court's authority to grant relief when, as is the case here, the state court has "adjudicated on the merits" the petitioner's federal constitutional claims. In such cases, federal habeas relief may only be granted when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).[2]

As the Supreme Court recently observed:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with

---

[2] For this reason, Scutella's request for an evidentiary hearing is denied. It is also denied because he had the opportunity to develop evidence in support of his allegations at the PCRA hearing. See 28 U.S.C. § 2254(e)(2).

10

this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011). See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of United States Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

The "clearly established Federal law" for AEDPA purposes in which to analyze Scutella's claim is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, he must show that Attorney Ridge's representation fell below an objective standard of reasonableness. 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. The law presumes that Ridge's actions were reasonable:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

11

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted).[3] The Third Circuit Court has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997), quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

The state court applied the correct legal standard when it evaluated Scutella's allegations of ineffective assistance. See Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406. Its adjudication also satisfies review under the "unreasonable application of" clause of § 2254(d)(1). In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. 111, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788.

This Court cannot conclude that the state court's adjudication was an objectively unreasonable application of Strickland. Ridge's PCRA testimony establishes that he advised Scutella of the options

---

[3] Strickland also requires that a petitioner demonstrate that he was prejudiced by counsel's deficient performance. "This requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

available to him after Judge Anthony denied his suppression motion, and properly pointed out to him that if he did not accept the Commonwealth's plea offer, the Information might be amended and in any event he would face significantly more jail time if he went to trial and was convicted. This Court finds that Ridge's advice and representation was objectively reasonable. But more to the point, this Court cannot conclude that the state court's decision in which it reached the same conclusion is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 787. Therefore, this claim must be denied under AEDPA.

In conclusion, Scutella is not entitled to habeas relief under AEDPA. Under the circumstances presented here, he cannot avoid the consequences of having admitted under oath that he was guilty of Count 2 of the Information, and this Court cannot conclude that his plea was anything other than knowing, voluntary, and intelligent.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Scutella's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 4, 2011

cc: The Honorable Maurice B. Cohill